UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

DEARBORN REFINING COMPANY
and ARAM MOLOIAN,

       Defendants.
_____/

Civil Action No.
09-CV-13597

HON. MARK A. GOLDSMITH

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is an action brought by the United States pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., and the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001 et seq., to collect a civil monetary penalty imposed by the United States Environmental Protection Agency ("EPA"). Defendants are Dearborn Refining Company ("DRC"), the corporate entity on which the civil monetary penalty was imposed, and its president and majority shareholder, Aram Moloian.

Now before the Court is Defendants' motion for judgment on the pleadings or, alternatively, for summary judgment, based on the statute of limitations. The parties agree that the five-year limitations period under 28 U.S.C. § 2462 is applicable to this action, but disagree regarding when the period began to run. This matter is fully briefed and the Court heard oral argument on January 20, 2011. For the reasons that follow, Defendants' motion will be denied.

## II.  BACKGROUND[1]

DRC operates a virgin-blending and used-oil facility in Detroit, Michigan. On September 28, 2001, after an investigation, the EPA filed an administrative complaint against DRC alleging violations of RCRA and its implementing regulations for the management of used oil and hazardous waste. Civil administrative penalty proceedings were commenced before an administrative law judge ("ALJ"), who issued a 74-page Initial Decision (attached as Exhibit A to the Complaint) finding DRC to be in violation of RCRA. Pursuant to 42 U.S.C. § 6928(a), the ALJ imposed a $1.25 million civil penalty against DRC and ordered it to comply with certain requirements delineated in the "Compliance Order" section of the decision.

DRC timely appealed the ALJ's Initial Decision to the Environmental Appeal Board ("EAB"), which issued a Final Order (attached as Exhibit B to the Complaint) on September 10, 2004, affirming the Initial Decision of the ALJ in its entirety, including the ALJ's decision to assess a $1.25 million civil penalty against DRC. Significantly, the EAB's Final Order required DRC to

> pay the full amount of the civil penalty [$1.25 million] within thirty (30) days after the filing of this Final Order, unless, prior to that, [DRC] and the Region negotiate an arrangement pursuant to which [DRC] will pay the penalty in more than one installment, in which case payment shall be made pursuant to the negotiated payment schedule.

Compl. at Ex. B, p. 6 (footnote omitted).

With regard to the Final Order, the parties agree that it: (1) was issued and filed by the clerk of the EAB on September 10, 2004, as the date stamp on the first page of the order reflects; (2) was received by the EPA's regional hearing clerk four days later, on September

---

[1] The facts set forth in this Opinion and Order are undisputed.

14, 2004, as reflected by the second date stamp found on the first page of the order;[2] and (3) by its express terms, affords DRC 30 days from September 10, 2004 – until October 10, 2004 – to either pay the penalty or negotiate an installment plan arrangement.

The parties further agree that the applicable statute of limitations governing the timeliness of the present action is five years. See 28 U.S.C. § 2462. The Government commenced the present action on September 11, 2009 – five years and one day after the filing of the EAB's Final Order on September 10, 2004, and four years, eleven months, and one day after October 10, 2004, DRC's deadline under the EAB's Final Order for either paying the penalty or negotiating an installment plan arrangement. Thus, if the five-year limitations period started on September 10, 2004, as Defendants contend, this action is time-barred. If the five-year period started a month later, on October 10, 2004, as the Government contends, the action is timely. The sole question for determination is on which of these dates the Government's claim "first accrued" under § 2462.

### III. ANALYSIS

The parties agree, as does the Court, that the five-year statute of limitations, codified at 28 U.S.C. § 2462, applies in this case. See Sec. & Exch. Comm'n v. Mohn, 465 F.3d 647, 653 (6th Cir. 2006) (section 2462 "applies to government actions to enforce administratively assessed penalties"). Section 2462 provides, in pertinent part:

> [A]n action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

---

[2] In the Complaint, the Government implies that September 14, 2004, is the key triggering date for purposes of the statute of limitations. See, e.g., Compl. ¶ 14. However, both parties now agree that the date on which the Final Order was received by the EPA's regional hearing clerk – September 14, 2004 – is entirely irrelevant for purposes of the statute of limitations.

The parties disagree on when the present claim "first accrued." The Government argues that this action is timely because its claim against Defendants first accrued, for purposes of § 2462, on October 10, 2004, the date on which DRC became noncompliant with the EAB's Final Order:

> [DRC's] violation of the terms of the Final Order, by failing to pay the penalty or negotiate an installment payment agreement within 30 days of the entry of the Final Order, was the last act that gave rise to the United States' ability to file suit in the District Court.

Gov't Resp. at 9-10. In support of its argument, the Government relies mainly on three cases, all discussed below.

Defendants, on the other hand, argue that the Government's claim first accrued on September 10, 2004, the date on which the Final Order affirming the imposition of the penalty was issued and filed. In support of their argument, Defendants rely mainly upon the decision in Mohn, wherein the Sixth Circuit determined that "a claim accrues and the period of limitations begins to run on any collection proceeding to which § 2462 applies once the underlying administrative action establishing liability becomes final." See 465 F.3d at 654.

Courts have used different verbal formulations in discussing the accrual of a claim for purposes of the statute of limitations. The Supreme Court has stated that claims accrue when there is a "right to demand payment." Crown Coat Front Co. v. United States, 386 U.S. 503, 513-514 (1967). See also Mohn, 465 F.3d at 654 ("[a] cause of action 'accrues' when a suit may be maintained thereon"); United States Dep't of Labor v. Old Ben Coal Co., 676 F.2d 259, 261 (7th Cir. 1982) ("[a] statute of limitations cannot begin to run until there is a right to bring an action"). While differing in phrasing, these formulations all share the view that a claim cannot accrue until all elements necessary for the pleading of the claim have transpired.

Thus, the date triggering the clock under § 2462 is the earliest date on which the Government could have brought the present enforcement action, i.e., the date on which all the elements of this enforcement action were in existence and could have been asserted in a

4

pleading. In the present case, the precise question becomes: Could the Government have brought this case immediately upon the issuance of the EAB's Final Order on September 10, 2004, or did it have to wait until the due date for payment had passed without payment by Defendants? For the reasons that follow, the Court concludes that Defendants' position cannot be sustained, and that the limitations period began running on October 10, 2004, the date on which the amount owing to the Government became delinquent.

The question whether the Government could have brought suit on September 10, 2004 is answered most directly by reviewing the EAB Final Order itself. It provided for a 30-day period during which the parties could negotiate a payment plan and expressly deferred any payment obligation until October 10, 2004. Given that the Government had to wait at least 30 days to receive payment, it would be inconsistent with the language of the Order to conclude that, on September 10, 2004, the Government could have initiated court proceedings, insisting that it had a "right to demand payment." Crown Coat Front, 386 U.S. at 513-514.

Of course, the Government had the right to payment in the future in the event of default. But such a right to future payment if there were a delinquency is no different than the right a mortgage lender has to future payment if a borrower defaults. And just as a mortgage lender has no "right to demand payment" by filing a lawsuit prior to a delinquency, so too the Government had no such right prior to delinquency. To hold otherwise would mean, in the case of a mortgage lender, that the statute of limitations would start to run on the day the mortgage note was signed, rather than on the day the borrower defaults. The untenability of the result in that circumstance applies with equal force in our case.

Another insurmountable barrier to the Government's filing of a suit prior to delinquency would have been an inability to satisfy standing requirements. Without proper standing under Article III of the Constitution, a plaintiff cannot invoke federal court

jurisdiction.  See Kardules v. City of Columbus, 95 F.3d 1335, 1347 (6th Cir. 1996) (standing required for federal court jurisdiction).  Standing requires three elements:

> First and foremost, there must be alleged (and ultimately proved) an injury in fact – a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical.  Second, there must be causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.  And third, there must be redressability – a likelihood that the requested relief will redress the alleged injury.

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998) (internal quotation marks and citations omitted).

In the present case, the Government could not have satisfied the injury in fact and redressability requirements under Article III until, at the earliest, October 10, 2004, the date on which Defendants defaulted on the penalty payment.  In order to satisfy the injury in fact requirement for standing, a plaintiff must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."  City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (internal quotation marks omitted).  Here, the Government suffered no harm of any kind until Defendants failed to pay the penalty by the deadline imposed by the EAB.  The Government could not have reasonably complained that it was harmed by the non-payment of the penalty until, at the earliest, it was entitled to the money. In addition, had the Government brought this action on September 10, 2004, before any amount became due, the Court would, at that time, have had no authority to provide the relief requested – a judgment pronouncing that the Government was then entitled to recover $1.25 million from Defendants.  Thus, the Government could not have satisfied the redressability requirement of the standing analysis.

Because the Government would have lacked standing to bring this case prior to October 10, 2004, the statute of limitations could not have begun to run prior to that date.

6

In addition to the constitutional barrier that the Government would have faced, the statute under which the Government has brought the present action would not have authorized a lawsuit prior to delinquency. FDCPA "provides the exclusive civil procedures for the United States . . . to recover a judgment on a debt." 28 U.S.C. § 3001(a) and (b). The term "debt" is defined in the act to include "an amount that is owing to the United States on account of a . . . penalty." Id. § 3002(3)(B). The use of the present tense "is owing" strongly suggests that what Congress authorized was action to recover amounts that were, in fact, currently due – not future obligations that might only potentially ripen into collectible debts. Indeed, the legislative history reflects that Congress was concerned with "delinquent debts" when it enacted FDCPA:

> Creation of a uniform federal framework for the collection of Federal debts in the Federal courts will improve the efficiency and speed in collecting those debts, thereby lessening the effect of <u>delinquent</u> debts on the massive federal budget deficit now undermining the economic well-being of the Nation.
>
> * * * *
>
> In adopting H.R. 5640, the Committee stresses the need to provide the necessary legal enforcement tools to assist the Federal government in its efforts to collect <u>delinquent</u> debts owed to the United States.
>
> * * * *
>
> Moreover, the Committee was particularly disturbed by reports that a number of <u>defaulted</u> loans involved recipients of Federal financial assistance defrauded by third parties who, in many cases, have not yet been pursued by the government for their allegedly illegal actions.

H.R. Rep. No. 101-736 (1990) (emphasis added). Thus, the legislative history of FDCPA supports the Court's conclusion that an action under FDCPA is premature until such point as the Government has a right to demand payment of an amount owed. This conclusion is further supported by the fact that the Court is unable to locate any case in which the Government has attempted to utilize FDCPA to recover an amount that was not yet due.

Without a delinquency, the Government could not even have filed a declaratory judgment action, seeking a hypothetical ruling on what might be owed in the future to the United States should Defendants default, because nothing in FDCPA authorizes such a suit. Further, such a suit would be constitutionally infirm due to a lack of standing, because declaratory actions still require the existence of a "case or controversy," <u>Detroit, Toledo & Ironton R. Co. v. Consol. Rail Corp.</u>, 767 F.2d 274, 279 (6th Cir. 1985), a component of which is standing. <u>Nat'l Rifle Ass'n of Am. v. Magaw</u>, 132 F.3d 272, 280 (6th Cir. 1997). Put differently, any opinion issued by a court before October 10, 2004 could say only that the Government <u>would be</u> entitled to recoup the penalty amount <u>if</u> Defendants, hypothetically speaking, failed to pay the penalty in full or negotiate a payment plan by October 10, 2004. Such an opinion based on the possible existence of a future injury would be strictly advisory in nature and therefore constitutionally forbidden. See <u>U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.</u>, 508 U.S. 439, 446 (1993).

Several additional points confirm the correctness of accepting the Government's position that it could not have brought this case until Defendants failed to pay the penalty by the deadline.

First, the Court's conclusion provides consistency in the manner in which statutes of limitations are applied where parties are assessed penalties under different statutory schemes. Under a number of statutory schemes, courts have held that the statute of limitations does not begin to run until there has been a failure to pay the penalty assessed by the administrative agency. See <u>United States v. Great Am. Veal, Inc.</u>, 998 F. Supp. 416, 417 (D.N.J. 1998) (interpreting the Packers and Stockyard Act, 7 U.S.C. § 181 <u>et seq.</u>); <u>Old Ben Coal</u> (interpreting the Federal Mine Health and Safety Act, 30 U.S.C. § 801 <u>et seq.</u>); and <u>United States v. Serfilco, Ltd.</u>, No. 98-C-2490, 1998 WL 641367 (N.D. Ill. Sept. 11, 1998) (unpublished) (interpreting Export Administration Act, 50 U.S.C. App. § 2401 <u>et seq.</u>). In

each of these cases, the Government sought to collect or enforce a civil monetary penalty assessed by an administrative agency against an entity whose business practices were found to be in violation of federal law, and the final orders imposing penalties in all three cases explicitly afforded the violators a specified number of days to pay the penalty following the issuance of the final order. Because the Government could not have brought its enforcement actions in these cases until after the violator failed to pay the penalty by the given deadline, the courts held in each case that its claims did not accrue for statute of limitations purposes until that time.

Defendants correctly note that the statutory language at issue in those cases differs from FDCPA in that the other statutes expressly provide that a penalty action may not be brought until a failure to pay has occurred. See 7 U.S.C. § 193(b); 30 U.S.C. § 819(a)(4) (since amended); 50 U.S.C. § 2410(f). Nevertheless, the critical point is that adopting Defendants' position would create the anomaly of different triggering events for accrual of administrative penalty claims for different statutes: an accrual date based on failure to pay penalties assessed under the above-referenced statutes and an accrual date based on the issuance date of the agency's order under FDCPA. Where the language of FDCPA can reasonably be read to produce consistency in the treatment of those subject to administrative penalties, there is no justification for judicially imposing disparate treatment of those subject to penalties under different statutes, in the absence of a clear congressional intent to do so.

Second, a limitations period cannot be construed in a way that would deny a claimant a full opportunity to bring its claim. In particular, the Government should not be unduly hampered by an unreasonable reading of the statute of limitations, because statutes of limitations must be strictly construed in favor of the Government. See Badaracco v. Comm'r of Internal Revenue, 464 U.S. 386, 391 (1984); Mohn, 465 F.3d at 653. Under Defendants' view, the limitations period would be truncated if the 30-day negotiation period were

9

included in the five-year limitations period, a result that would effectively deny the Government the full opportunity to assert its claim to which it is entitled.

Third, to find that the Government could have filed this action during the 30-day negotiation period ordered by the EAB – before the Government had a right to "demand payment" of any amount – would prematurely encourage aggressive debt collection tactics and undermine the spirit of amicable resolution embodied in the EAB provision for a limited negotiation period.

Fourth, Defendants' reliance on Mohn is misplaced. It is true that the Sixth Circuit stated in that case that "the period of limitations begins to run on any collection proceeding to which § 2462 applies once the underlying administrative action establishing liability becomes final." Mohn, 465 F.3d at 654. The Court also recognizes, as Defendants point out, that the "final Agency action" occurred in this case on September 10, 2004, and not a month later.[3] However, Mohn was not addressing the question presented in the present case, i.e., whether the Government's claim for enforcement of a penalty accrued when the agency issued its order or whether it accrued when there was a failure to pay in accordance with the order. Rather, Mohn involved a two-stage administrative process in which a dealer was sanctioned by the National Association of Securities Dealers ("NASD") whose order was then affirmed by the Securities and Exchange Commission ("SEC"). The question in Mohn was whether the statute of limitations for enforcement of the penalty under § 2462 ran from the date of the NASD order or the SEC order. The court held that it ran from the date of the SEC order because that was the date when the administrative action was concluded. However, the Sixth Circuit was not faced with, and did not address, accrual of the penalty claim in the context of

---

[3] The EPA's implementing regulations provide that "[a] final order constitutes the final Agency action in a proceeding," 40 C.F.R. § 22.31(a), and "[a] final order is effective upon filing." 40 C.F.R. § 22.31(b). In the present case, the "final Agency action" occurred on September 10, 2004, the date on which the EAB issued its Final Order.

our case where a single agency has issued an order giving the parties additional time to finalize payment terms.[4]

### IV. CONCLUSION

For the reasons stated, the time for filing this action expired, pursuant to the applicable five-year limitations period contained in 28 U.S.C. § 2462, on October 10, 2009. As this action was filed before that date, the case is not time-barred. Defendants' motion for judgment on the pleadings or, alternatively, for summary judgment [docket entry 19], is denied.

SO ORDERED.

                                                  s/Mark A. Goldsmith
                                                  MARK A. GOLDSMITH
                                                  United States District Judge

Dated: March 31, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2011.

                                                  s/Deborah J. Goltz
                                                  DEBORAH J. GOLTZ
                                                  Case Manager

---

[4] In a related vein, the Court's decision is not inconsistent with Friends of Tims Ford v. Tenn. Valley Auth., 585 F.3d 955, 964 (6th Cir. 2009), where the Sixth Circuit noted, in the context of a private lawsuit for judicial review of an agency action, that "[t]he limitations period begins to run from the time of 'final agency action.'" This rule is not applicable here because the present case is an enforcement action to collect a monetary penalty, while Friends of Tims Ford was an action seeking judicial review of an agency action. The event triggering accrual of the cause of action in Friends of Tims Ford – and those cases like it where an agency action is being appealed – is the issuance of the agency's final decision. By contrast, the event triggering accrual of the Government's claim in this case to enforce an administratively-imposed penalty is the existence of a "debt" under FDCPA.